after Dr. Folks' formal notification of dismissal and ten hours and fifty six minutes after Dr. Deil-Amen's PIP coercion.

345. Under UHAP policy the Dean has no role to play in this action.

346. On 19th May Dr. Bailey responded pointing out Dean Berry's after-the-fact attempt to give Dr. Bailey the impression he could condition Dr. Bailey's removal on compliance with this unwarranted PIP was not procedural and was indicative of the collusive, pretextual and unlawful nature of his removal.  Dr. Bailey stated:

"Dean Berry, thanks for your invitation.  The formal dismissal notification - which is not a "request" as you put it because it was issued formally by the Provost and is not conditional in her view - was issued as of 5.18.23 and has been copied to multiple Federal agencies.  This notification is the product of a coordinated and unlawful plan to enact my removal via unwarranted targeted review in conjunction with numerous unlawful retaliations including office exclusions, extra-procedural campus exclusion and false UA PD callout by HR that violates State law as detailed in my formal complaint to UA PD on 5.15.23 as well as the unsupported all-campus and facility exclusion order inexplicably issued without mandated UA PD support by the Provost with Ms. Brennan's participation on 5.10.23.  These actions violate numerous UA and Board policies and are all transparent retaliatory actions being delivered in collusion.

I have stated my concerns to you, Dr.Deil-Amen and Provost Dr. Folks on a number of previous occasions, however no safeguarding or COI relief was delivered per normal UA processes.  Review and other coercions were enacted on multiple occasions.  I have

clearly stated my objections to this review as well as Dr. Deil-Amen's evident malfeasance in management to you on multiple occasions previously without acknowledgment or corrective action, so at this stage I don't think that you and I have anything more to discuss except perhaps the content of depositions."

347. There was no response from Dean Berry or Mr. Henderson.

348. A graduate student who had taken Dr. Bailey's spring class thanked him for the quality of his instruction and asked him to serve on her Committee.  Dr. Bailey forwarded this request to Dr. Bertrand and Dr. Bertrand asked the student to contact her directly.  Despite the damaging circumstances Dr. Bailey experienced, he continued to deliver quality work and discharge his obligations with professionalism as he done for twenty years at UA.  Both he and the student were deprived of this opportunity by his pretextual removal.

349. On 25th May Dr. Bailey filed a timely Appeal of Dismissal with President Robbins.

350. On 28th May President Robbins notified Dr. Bailey that he had commissioned the Faculty Senate Committee on Conciliation to investigate his Appeal and deliver recommendations.

351. Dr. Bailey spent some time and investment in securing alternative employment, including applying for other jobs, qualifying for rideshare companies, insuring and restoring his vehicle, and initiating service.

352. On 13th June Dr. Bailey met with the Conciliation Committee remotely and answered their questions about his experiences and the chronology of events dating to his

harassment complaints in 2017 and developments since.

353. The Conciliation Committee delivered a letter to President Robbins on 5th July noting numerous violations of policy and process, the false and defamatory "threat" classification without rule or UA PD support in service of retaliation, and the violation of Dr. Bailey's academic freedom and freedom from retaliation for civil rights complaints under Board Rules 1-119 and 6-914.

354. The Conciliation Committee noted that Dr. Bailey had not been provided with cause for his dismissal by Dr. Folks enacted under Board Rule 6.201.

355. The Conciliation Committee stated they found no evidence of threat or other issues in Dr. Bailey's case.

356. Regarding the 2021 and 2022 performance reviews, the Committee stated that "Dr. Bailey provided a compelling case that these were performed with animus, against University policy and standard practice, and without regard to the terms and conditions of his appointment that had been previously agreed-upon" and that there were "multiple apparent violations of the APR process."

357. On 8th August Dr. Bailey met with President Robbins and Mr. Henderson, again with Dr. Hudson serving as witness. President Robbins addressed the recommendations of the Conciliation Committee and informed Dr. Bailey of rescission of dismissal and appointment to Research Innovation and Impact in similar rank.

358. In his followup letter of 11th August President Robbins confirmed these actions. He denied the Committee's request for removal of the targeted performance reviews on the

grounds that it was "difficult." Dr. Bailey was further notified of the possibility of dismissal in this letter, but without reference to any UA procedures or Board rules nor given reason for this notification.

359. On 15th August Dr. Bailey sent a letter to President Robbins acknowledging his reinstatement and transfer, reiterated his concerns with the abusive and unlawful HR actions, and again pointed out the unnecessary nature of the retention of contaminated reviews which Dr. Bailey believed was again being made with the intent to serve as platform for another unwarranted and retaliatory removal at a later date.  There was no response.

360. Dr. Bailey contacted former UA PD Chief Mr. Jason Brei, who had been appointed as Chief of PD at Utah State University since then, as well as Utah State Trustees for Risk Management, and copied the Utah Governor's office with a request for written confirmation from Mr. Brei of a UA PD exclusion order supporting the campus-and-all-facilities exclusion enacted while he was UA PD Chief in May.  There was no response.

361. Dr. Bailey reported the abuse of law enforcement by HR without cause and with the intent to harass and intimidate to the Federal Bureau of Investigation, the DoJ Civil Rights Division and the NSF OECR.

362. Dr. Bailey began work for RII on August 15th.  For seventy-seven days Dr. Bailey worked without a Notice of Appointment or contract despite raising this matter with three managers in RII during that period.  He was informed by one of these managers that HR "forgot" about the contract before finally one was provided on 28th October.

363. Dr. Bailey was allocated an office in the basement of the lab area in BioSci West building with an ant infestation.  He reported this to RII staff who called for facilities response.  When an ant control tech arrived, the first thing he asked Dr. Bailey even before introducing himself was "What did you do to get sent down here?"

364. On 22nd September 2023 Dr. Bailey received a Notice of Right to Sue from the EEOC.

365. More than seven months after Dr. Bailey presented his Appeal of Denial of Promotion there has been no response or acknowledgment.

366. In November 2023, two instructors in the College of Education were suspended based on controversy following sharing of a student classroom recording online.  UHAP 7.01 policy governing faculty conduct was invoked to support administrative adverse action including suspension from teaching duty.  This policy was never stated or invoked to Dr. Bailey by any officer or HR.

367.  Not a single policy or Rule reference was provided to Dr. Bailey by any of the numerous administrators discharging a cascade of adverse actions up to and including his dismissal despite his numerous written requests.

368. A sit-in by these instructors, faculty, students and community members was held on 20th November in the College of Education to protest the adverse actions taken against these instructors.  Dean Berry was present.  He was quoted by AZPM as follows: "I heard the students, the faculty members, and I understand their passion around the issue. I just want to make sure we do our due diligence and have conversations with the people

I need to have the conversations with." He specified these people as the OGC, HR and the Provost's office.

369. Between September 2022 and May 2023, the UHAP 7.01 policy was subjected to an undocumented reversion to a 2019 version that did not specify sanctions for failure by appointed faculty to perform mandated sexual harassment reporting. Dr. Bailey had cited Dr. Folks to DoJ and other civil rights entities under this policy as published in 2022 for wilfully ignoring the severe sexual harassment reported to him by a student and shared with these administrators.

370. A public records request for the UHAP 7.01 policy and the communications on its modification was filed in April 2023. This request was fulfilled more than seven months later. Citizens complained to State legislators and foundations about this delay in response.

371. In November 2023, Dr. Rhoades, the Interim Head of EPSP, sent an email to faculty in which he raised specific concerns about the lack of due process in the campus exclusion and disciplinary procedures invoked against the two instructors.

372. During this year, as previously, Dr. Bailey was repeatedly thanked by community members including a UA PD member for working for a safer campus by refusing to accept deliberate indifference and coverup of harassment and abuse as well as mismanagement of threat despite considerable professional risk and cost to himself.

373. The "threat" alleged to be posed by Dr. Bailey, which perception was confined to specific managers in EPSP, EDL and the Provost's office and was not shared by all in the

College of Education, vanished totally in early May, prior to Dr. Bailey's dismissal but following the meeting with Dr. Deil-Amen and Dr. Folks' stepping down from the Provost's role.

374. Between August 2003 and July 2022, and again after May 2023, nobody among the approximately three thousand staff, students, faculty and community members at UA and other universities who engaged with Dr. Bailey during this time alleged to him, or his managers or colleagues, that Dr. Bailey posed a "threat."

375. Between 1993 and 2023, nobody among the approximately fifteen thousand citizens who had attended more than three hundred public meetings in six states organized and run by Dr. Bailey during his SPI work alleged to him, or his managers or colleagues, that he presented a "threat."

376. Unlike Drs. Folks and Dr. Deil-Amen and Dean Berry, Dr. Bailey has no court record.  Dr. Bailey has no police arrests, violations or cautions not only in his twenty years at UA but in his entire life.

### *Timeliness of Complaint*

377. Dr. Bailey has exhausted his administrative remedies at institutional, State and Federal levels.

378. Between 2017 and 2020 Dr. Bailey complained a number of times to the OGC, President Robbins and three Provosts (Drs. Comrie, Goldberg and Folks), two Vice Provosts for Faculty Affairs, but with no OIE compliance or safeguarding.  Dr. Jones was

named in OIE and other complaints for discrimination and hostile working environment by others subsequent to Dr. Bailey's and his wife's complaints.

379. In November 2019 he filed a complaint with the Board of Regents under Board Rule 6-914 alleging Abuse of Office and Unlawful Conduct. This complaint was the same as he had submitted to the various UA officers including President Robbins and OGC but without response from anyone at UA. The Board returned an acknowledgment of wrongful conduct but failed to deliver compliance and safeguarding.

380. In June 2020 Dr. Bailey co-filed with two women a complaint alleging discrimination on the basis of sex with the U.S. Department of Education, Office for Civil Rights (OCR 08-20-2275). In August 2020, he and co-complainants received notice that the U.S. Department of Education was transferring the matter to the U.S. Equal Employment Opportunity Commission ("EEOC"). Because these actions had occurred more than 180 days prior, the harassment and discrimination were timed out and could not be pursued. These complaints remain unaddressed and unactioned.

381. In September 2022 Dr. Bailey filed a complaint alleging retaliation against him for his civil rights complaints with the the U.S. Department of Education, Office for Civil Rights (OCR 08-22-2345).

382. In September 2022 Dr. Bailey filed a complaint with the National Science Foundation's Office for Equity and Civil Rights. There was no response to this until he followed up in early 2023.

383. Beginning in September 2022 and continuing to May 2023 Dr. Bailey filed a number of complaints with the Department of Justice Civil Rights Division. One of these complaints was co-complained with women victims.

384. In October 2022 Dr. Bailey filed a complaint with the Arizona Attorney General's office for violation of rights. He was contacted by a representative and a call was scheduled. During this call the AG representative stated that the AG could not investigate UA because of conflict of interest on the grounds UA was also a State entity.

385. In November 2022, he received notice that the U.S. Department of Education Office for Civil Rights was transferring the matter to the U.S. Equal Employment Opportunity Commission ("EEOC").

386. On 17th February 2023 he raised his concern about violation of rights with Faculty Senate. He submitted a Grievance form to the Grievance Clearinghouse Committee (GCC) however a hearing was denied by the GCC Chair.

387. Following Dr. Bailey's presentation of these violations at the Open Session on 27th February Chair Hudson requested victim testimonials from two women victims of the discrimination and these were shared with Faculty Senate. Faculty Senate took no action.

388. In March 2023 he filed with NSF OECR. This complaint was dismissed in May because of ongoing EEOC investigation.

389. In May 2023 he filed a complaint under Board Rule 6-914 with President Robbins and the Board of Regents as well as five Federal civil rights entities alleging retaliation and abuse of office. This complaint was passed directly to Dr. Folks, who was named in

the complaint.  She passed it to Mr. Henderson.  Dr. Bailey was contacted by a UA-retained attorney after his dismissal.  He refused to participate in this investigation because of potential conflict with the ongoing EEOC investigation as well as Conflict of Interest and Conflict of Commitment on the part of the attorney.  Rule 6-914 does not specify the pathway used.

390. In September 2023 he re-filed this complaint with NSF OECR.  This was dismissed in November 2023 on the grounds of EEOC determination.

391. On 22nd September 2023, the EEOC issued a determination with a Notice of Right to Sue letter.

392. Dr. Bailey timely filed this action within 90 days of receipt of his Right to Sue letter.

## COUNT I.

### Violation of Title VII Retaliation 42 U.S.C. § 2000e-3(a)

### (All Defendants)

393. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

394. Plaintiff is an employee within the meaning of Title VII.

395. UA is an employer within the meaning of Title VII.

396. Title VII prohibits employers from retaliating against employees that have made or assisted in claims:

"It shall be an unlawful employment practice for an employer to discriminate against an of his employees … because he has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

397. Plaintiff has long been the subject of discrimination on the basis of sex, as defined by Title VII.

398. UA defendants have consistently treated Plaintiff differently because of his protected activity.

399. Plaintiff spent years advocating for equal treatment and protesting discrimination, but each time he did so his efforts were met with deliberate indifference and noncompliance with polices and Board Rules before his relentless efforts to challenge the validated harassment and discrimination and to correct the chilled climate by raising these in workplace forums dedicated to workplace health and compliance as well as Federal civil rights entities resulted in numerous and severe retaliations up to and including dismissal in violation of process and policies.

400. Defendants have consistently retaliated against Plaintiff when he has advocated for equitable treatment under Title VII including reminding defendants of compliance requirements and noting numerous violations of their own harassment and retaliation policies.

## COUNT II

### Title IX Retaliation 20 U.S.C. §§ 1681, et seq.

### (All Defendants)

99

401. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

402. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, et seq.

403. Plaintiff engaged in Title IX protected activity by repeatedly reporting sex discrimination and harassment to his supervisors, President Robbins, OGC, HR, Board, HLC, WSCUC, OCR, EEOC, DoJ, and NSF OECR.

404. During that time, Plaintiff directly addressed the Board of Trustees about the lack of action on the reports and notified them directly of deliberate indifference and then retaliation. The Board acknowledged wrongful conduct but took no action to safeguard victims or prevent recurrence or retaliation.

405. Plaintiff's actions were protected from retaliation per the Supreme Court's holding in Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005).

406. UA defendants continued to retaliate against Plaintiff after he complained to OCR, DOJ and EEOC, in further retaliation for making these reports.

407. These adverse actions would not have occurred but for Plaintiff's TITLE IX reports of which Dr. Folks stated awareness in writing, noting these had been "widely shared" before she attempted to condition Plaintiff's filing of civil rights complaints outside of UA and Board policy and to directly threaten his career with Ms. Brennan's assent.

408. Numerous UA administrators, including President Robbins and the Board of Regents, were aware of the collusive and escalating retaliatory actions prior to dismissal

but all of these administrators acted with deliberate indifference toward Plaintiff's reports

of continued retaliation, abuse of office and violation of rights by Drs. Folks, Romero,

Berry, Deil-Amen and Ms. Brennan.

409. UA had knowledge of this retaliation and control over these employees.

## COUNT III

### Denial of Equal Protection 42 U.S.C. § 1983 and the Fourteenth Amendment

### (Defendants Robbins, Brennan, Folks, Romero, Berry, Deil-Amen and Bertrand in

### their individual capacities)

410. Plaintiff incorporates by reference the allegations contained in the previous

paragraphs.

411. Plaintiff alleges violations of 42 U.S.C. § 1983 against the above-named Defendants

in their individual capacities due to discrimination on the basis of sex that denied Plaintiff

equal protection under the law in violation of the Equal Protection Clause of the

Fourteenth Amendment.

412. Defendants are state actors and at all relevant times were acting under color of law.

413. The Fourteenth Amendment to the United States Constitution, enforceable pursuant

to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. 12, Pearson

v. Callahan, 555 U.S. 223, 231 (2009).

414. As UA President, President Robbins was responsible for oversight of the university

and ensuring that the university complied with its legal obligations

415. As Provost and Chief Academic Officer, Dr. Folks was responsible for the oversight of faculty and ensuring that UA complied with its legal obligations

416. As AVP of Human Resources, Ms. Brennan was responsible for the oversight of staff and ensuring that UA complied with its legal obligations.

417. As Vice-Provost for Faculty Affairs, Dr. Romero was responsible for the oversight and management of faculty and ensuring that UA complied with its legal obligations.

418. As Dean of the College of Education, Dean Berry was responsible for oversight of the College and ensuring that the College complied with its legal obligations.

419. As Head of the EPSP Department, Dr. Deil-Amen was responsible for the management of faculty within the Department and ensuring that UA complied with its legal obligations.

420. As Head of EDL Department, Dr. Bertrand was responsible for the management of the faculty within the Department and ensuring that UA complied with its legal obligations.

421. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to intermediate scrutiny.

422. Defendants' discrimination against Plaintiff on the basis of sex was not substantially or rationally related to any legitimate government interest.

423. Defendants, in their individual capacities and under color of law, subjected Plaintiff to violations of his liberty and property interests by failing to comply with the procedures and timelines outlined in their own UHAP Policies and Board Rules, engaging in direct

discrimination and harassment of Plaintiff, failing to timely investigate and respond to the harassment of his family and the discrimination against other women, failing to ensure that the effects of discrimination against him were fully remedied, failing to respond appropriately to his reports of retaliation by Defendants Deil-Amen and Berry, failing to timely and investigate and respond to his report of, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints and failing to act to prevent the ongoing retaliation.

424. Defendants' discrimination against Plaintiff on the basis of sex and race endangered his safety, privacy, security, and well-being.

425. Defendants' actions and inactions deprived Plaintiff of his right to equal dignity, liberty, and autonomy by treating him as a second-class citizen at UA

426. Plaintiff was denied the opportunity to take advantage of interim measures that could have assisted him in fully accessing his right to liberty after he had been the victim of retaliation.

427. This selective treatment was related to UA's interest in covering up sexual misconduct and discrimination; in other words, this selective treatment was not substantially or rationally related to any legitimate government interest.

428. This selective treatment caused Plaintiff to have to seek stress counseling to deal with the emotional damage the ongoing abuse caused him.

429. It is clearly established that failing to properly investigate allegations of sex and race discrimination violates the Equal Protection clause.

103

430. First, "a State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."

431. More recently, the Supreme Court heard a case in which petitioners filed suit against the local school district's governing board and superintendent, alleging that their response to allegations of peer-on-peer sexual harassment of petitioners' daughter was inadequate and constituted unconstitutional sex discrimination in schools in violation of 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment.

432. The Supreme Court held that "Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights," and "§ 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools," including in the case of school officials' inadequate responses to allegation of peer-on-peer sexual harassment.

433. Plaintiff's right to equal protection under the law is one of which reasonable officials in Defendants' positions would have known, particularly given the events of the past ten years, including the Coach Carter investigation, indictment, conviction and subsequent imprisonment of defendant; the multiple U.S. Department of Education, Office for Civil Rights investigations UA has gone through; the external audits UA has had performed on its Title IX reporting and investigation processes in 2018; and recent cases against UA such as Grabowski, and other anonymous TITLE IX cases, which

centered on the due process rights of parties in the Title IX investigation and case resolution processes.

434. The actions of Defendants violated clearly established Constitutional law; thus, they are not entitled to qualified immunity

**COUNT IV**

**First Amendment Retaliation Freedom of Speech 42 U.S.C. § 1983**

**(Defendants Robbins, Folks, Romero, Brennan, Berry, Deil-Amen and Bertrand in their individual capacities)**

435. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

436. The free speech provision of the First Amendment to the U.S. Constitution provides that "congress shall make no law … abridging the freedom of speech and of the press." U.S. Const., amend. I.

437. The requirements of the First Amendment are applied to the states and state actors through the due process clause of the Fourteenth Amendment of the U.S. Constitution.

438. Under 42 U.S.C. § 1983, Defendants may be held liable for their violation of the free speech rights of Plaintiff by taking adverse action against him in retaliation for his exercise of his First Amendment right to speak out on a matter of public concern.

439. Plaintiff engaged in protected speech when he spoke out about his family member's and other womens' experiences of being harassed and discriminated against and how his

role was treated inequitably after he reported this harassment and protested deliberate indifference and coverup.

440. Plaintiff engaged in protected speech when he addressed UA administration, President Robbins, and the Board of Regents about Dr. Jones' unethical and disturbing behavior and continued employment as well as the organized denial of safeguarding by those required to deliver such safeguarding (Drs. Burd, Comrie, Miller, Romero, Folks, Berry, Deil-Amen, Bertrand, and President Robbins).

441. Plaintiff's speech was a matter of deep public concern, particularly given that despite the Board's acknowledgment of wrongful conduct in response to Dr. Bailey's first protected disclosure in 2019, Dr. Jones continues, to this day, to be employed by UA and continues to holds an executive officer's post i.e. Deanship that entails management of vulnerable staff members as well as students and that further discriminations and harassments were committed after these complaints were filed and after UA Defendants demonstrated knowledge of earlier similar misconduct that predated these complaints and abuses. A number of employees, including Dr. Bailey, were terminated because of their complaints while the harasser prospered.

442. After speaking out against the years-long harassment and discrimination directed against multiple women, and seeking to ensure that newly-appointed officers at UA were aware of their legal responsibilities under TITLE IX and UA policies and Board rules, Plaintiff was repeatedly denied promotion and professional opportunities, repeatedly excluded from the workplace, then excluded from all campus facilities, defamed as

"threat" without reference to policy or Rule and in the absence of UA PD findings or record, then subjected to fraudulent callout of UA PD without cause and with intent to harass and intimidate, followed by dismissal without cause.

443. Plaintiff's constitutionally protected activity was a substantial and motivating factor for Defendants' adverse actions. Dr. Folks with Ms. Brennan's assent stated to Dr. Bailey "Think about your career" while delivering adverse actions immediately following Dr. Folks reference to, and nonprocedural conditioning of, his civil rights complaints of which they had demonstrated awareness by stating in writing previously that these complaints had been "widely shared."  Thus, Defendants acted with a retaliatory intent and motive.

444. Defendants' conduct would chill an ordinary person from exercising their First Amendment rights.

445. Defendants acted intentionally and with callous disregard for the Plaintiff's clearly established constitutional rights.

## COUNT V

### Violation of Title IX Creating a Heightened Risk 20 U.S.C. §§ 1681, et seq.

### (All defendants)

446. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

447. Plaintiff Bailey alleges violations of Title IX against UA Defendants due to the heightened risk of sex-based discrimination on UA's campus. Defendants operate

programs in receipt of federal funds and are thus covered by Title IX's prohibition on sex-based discrimination.

448. Despite having written Harassment and Retaliation policies, and being subject to Board Rules, UA repeatedly failed to follow these policies and Rules and failed to investigate and correct numerous policy and Rule violations. While the defendants institutional commitments included "We do not tolerate any form of discrimination or harassment and we take active steps to ensure all members of our community understand our institutional values" (President Robbins, 2018 Harassment Training module slide #1), UA did little to ensure that policy was realized, and instead created a heightened risk of sex-based discrimination and harassment because of failure to apply and enforce its own policies.

449. Despite the Board having written Harassment and Retaliation Rules including 1-119 and 6-914, and delivering repeated and detailed mandated trainings including but not limited to those exemplified above, UA defendants failed to follow these Rules. UA did little to ensure that these Rules were respected, and instead created a heightened risk of sex-based discrimination and harassment by lack of enforcement against known violators of these Rules and the acknowledged authors of wrongful conduct.

450. UA has spent years creating and fostering an environment filled with sexual harassment, discrimination, retaliation, and abuse. Plaintiff Bailey is one of numerous victims who have undergone a lengthy and traumatizing ordeal, only for their abusers to

remain employed at UA, rewarded with powerful and well-remunerated posts, and able to continue to abuse them and others similarly situated.

### COUNT VI

### Denial of Substantive and Procedural Due Process 42 U.S.C. § 1983, the Fifth Amendment, and the Fourteenth Amendment

### (Defendants Robbins, Folks, Romero, Brennan, Berry, Deil-Amen and Bertrand in their individual capacities)

451. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

452. Plaintiff alleges violations of 42 U.S.C. § 1983 against the above-named Defendants in their individual capacities due to deprivation of his property and liberty interests without adequate notice or a meaningful opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment.

453. All Defendants are state actors and at all relevant times were acting under color of law.

454. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1.

455. As UA President since 1st July 2017, President Robbins was responsible for oversight of the UA and ensuring that the university complied with its legal obligations.

456. As UA Provost until 18th May 2023 and as Vice Provost for Faculty Affairs during this period and ongoing, Drs. Folks and Romero respectively were responsible for oversight of the university and ensuring that the university complied with its legal obligations.

457. As Dean of the College of Education from 1st July 2022, Dean Robert Q. Berry was responsible for oversight of the College and ensuring that the College complied with its legal obligations.

458. As Head of the EPSP Department, Dr. Deil-Amen was responsible for the management of faculty within the Department and ensuring that UA complied with its legal obligations.

459. As Head of EDL Department, Dr. Bertrand was responsible for the management of the faculty within the Department and ensuring that UA complied with its legal obligations.

460. Defendants' failure to comply with the administrative requirements of Title IX and its own Policies including UA200, Board Rules 1-119 and 6-914 deprived Plaintiff of his substantive due process rights to his liberty interest in bodily integrity and his property interest in his professional reputation and reasonable advancement in his career.

461. Defendants' failure to comply with the administrative requirements of Title IX and UA's own Policies deprived Plaintiff of his procedural due process right to be heard prior to depriving him of his liberty and property interests.

462. Defendants, in their individual capacities and under color of law, subjected Plaintiff to violations of his liberty and property interests by failing to comply with the procedures and timelines outlined in their own UA Policies and Board Rules, engaging in direct discrimination and harassment of Plaintiff, failing to timely investigate and respond to Dr. Jones' harassment of his family, failing to ensure that the effects of Dean Jones' discrimination against his family were fully remedied, failing to respond appropriately to his reports of retaliation by Drs. Folks, Romero, Deil-Amen, Bertrand and Dean Berry, failing to timely and investigate and respond to his report of HR's harassment of him enacted via abuse of UA PD, and failing to adequately train and supervise their staff with respect to the handling of Title IX complaints.

463. Plaintiff's right to due process under the law is one of which reasonable officials in Defendants' positions would have known, particularly given the events of the past ten years, including the appalling abuse of Ms. Baillie Gibson and the investigation, trial and criminal sentencing of Coach Carter for aggravated assault and aggravated assault with a deadly weapon conducted in his campus office; the egregious cases of misconduct by Dr. Timothy Slater, Dean Jesse Bootman and Dr. Stupiansky as well as a number of anonymous victims who have obtained settlements under TITLE IX filings including one of $1.275 million that was quoted as "unprecedented" when reached in 2020; the multiple U.S. Department of Education, Office for Civil Rights investigations UA has gone through; the multiple EEOC charges of discrimination necessitated by the pattern and practice of these violations; the external audit UA has had performed on its Title IX

reporting and investigation processes in 2018; and recent cases against UA such as Grabowski vs Board which centered on the due process rights of parties in the Title IX investigation and case resolution processes as well as the Clery Act investigation initiated by the Department of Education's Clery Unit in 2022.

464. The actions of Defendants violated clearly established Constitutional law; thus, they are not entitled to qualified immunity

### COUNT VII

### Conspiracy Against Rights

### 18 U.S.C. § 241

### (Defendants Folks, Romero, Brennan, Berry, Deil-Amen and Bertrand)

465. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

466. From on or about June 28th 2022, through on or about May 18th 2023, in the state of Arizona, the Defendants LIESL FOLKS, DIANE BRENNAN, ANDREA ROMERO, REGINA DEIL-AMEN, ROBERT Q. BERRY and MELANIE BERTRAND did knowingly combine, conspire, confederate, and agree with co-conspirators, known and unknown, to injure, oppress, threaten, and intimidate one or more persons in the free exercise and enjoyment of a right and privilege secured to them by the Constitution and laws of the United States—that is, the right to present civil rights complaints free from retaliation for so doing under 34 CFR §106.71(a) (In violation of Title 18, United States Code, Section 241).

467. Purpose of the Conspiracy. The purpose of the conspiracy was to deny Dr. Bailey's rights under 34 CFR §106.71(a) by suppressing, intimidating, defaming, coercing, silencing, punishing, damaging and ultimately removing Dr. Bailey and doing so by repeated, knowing, pre-planned and collusive violation of employer policies and Board Rules and to reinforce the known chilled climate on the UA campus to coerce, inhibit and suppress lawful civil rights complaints by Plaintiff and all others similarly situated.

## COUNT VIII

### ARS § 41-1464.A   Other unlawful employment practices; opposition to unlawful practices; filing of charges; participation in proceedings;

### (All defendants)

468. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

469. Despite the Board having acknowledged wrongful conduct by UA officers in the criminal harassment of Dr. Bailey's wife and the lack of compliance in safeguarding and reporting, UA Defendants engaged in retaliation against Dr. Bailey's well-known protected activity as defined in D(1), (4) and (5) above by delivering numerous adverse actions up to and including dismissal with the intent to deter him and others from engaging in this protected activity as well as damage him.

## Count IX

### ARS § 15-1864C Students Right to Speak in a Public Forum

### (Defendants Folks, Brennan)

470. Plaintiff incorporates by reference the allegations contained in paragraphs 216 through 222, 226 through 227, 233 through 239, 250 through 253, 275 through 277, 279 through 282, 290, 295, 303 through 314, 322 through 328, and 331 through 338.

471. Dr. Bailey was lawfully present at the Staff Safety Forum on 4th May and was subjected to a UA PD callout by HR on the grounds of being "unwelcome." Dr. Bailey was then subjected to an immediate leave-campus-and-all-facilities order on 10th May that denied his right to lawful presence without legal basis. These actions substantially infringed on his right to engage in expressive activity on the campus.

### Count X

### ARS § 13-2907.01. False reporting to law enforcement agencies

### (Defendant Brennan)

472. Plaintiff incorporates by reference the allegations contained in paragraphs 277, 282, 303 through 313, 322 through 327 and 334 through 338.

473. An HR representative stated that Dr. Bailey was "unwelcome" at the Safety Forum as reason for UA PD callout. The failure of HR to clarify the geographical extent of the office exclusion order to UA PD despite doing so verbally to Dr. Bailey and witnesses six days prior and then repeating this extent in writing to Dr. Bailey, and then premising UA PD enforcement action on this demonstrates knowing misrepresentation with intent to mislead a peace officer. The intent to mislead is demonstrated by the UA PD report seeking written clarification of an order that had already been provided to the plaintiff by

Ms. Brennan and Dr. Folks before the UA PD callout was enacted in conjunction with

HR's failure to provide this information to enable UA PD to perform their lawful duties.

## Count XI

### Arizona Constitution Article 2 Section 4

### Deprivation of constitutional right to liberty without due process of law

### (Defendants Folks, Brennan)

474. Plaintiff incorporates by reference the allegations contained in paragraphs 216

through 222, 226 through 227, 233 through 239, 250 through 253, 275 through 277, 279

through 282, 290, 295, 303 through 314, 322 through 328, and 331 through 338.

475. The campus-and-all-facilities exclusion order issued by Dr. Folks with Ms.

Brennan's conformance and without UA PD support on 10th May 2023 infringed on Dr.

Bailey's constitutional liberty by denying his constitutional right to access UA campus

areas not under administration control including sports facilities, public areas such as the

Mall and other locations not subject to the Provost's control.  This exclusion did not

follow the due process of law.  This deprivation of rights was exacerbated by previous

abuse of UA PD via fraudulent callout and misrepresentation and by the legally-invalid

premise on which this campus-and-all-facilities exclusion itself was issued.

## Count XII

### Arizona Board of Regents Rule 1-119 Retaliation

### (All defendants)

476. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

477. UA Defendants engaged in retaliation against Dr. Bailey's well-known protected activity as defined in C.4(1), (2) and (3) above by delivering numerous materially adverse actions up to and including dismissal with the intent to damage him and deter him and others from exercising their right to engage in protected activity.

478. Defendants' actions were intentional, with deliberate disregard for Plaintiff's rights and sensibilities.

## Count XIII

## Arizona Board of Regents Rule 6-914

### (All defendants)

479. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

480. Despite the Board having acknowledged wrongful conduct by UA officers in the criminal harassment of Dr. Bailey's wife and the lack of compliance in safeguarding and reporting, Defendants engaged in retaliation against Dr. Bailey's well-known protected activity as defined in D(1), (4) and (5) above by delivering numerous adverse actions up to and including dismissal with the intent to deter him and others from engaging in this protected activity as well as damage him.

481. Defendants' actions were intentional, with deliberate disregard for Plaintiff's rights and sensibilities.

## DAMAGES

482. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

483. As a direct and proximate result of the above-described conduct, Plaintiff suffered general, special, incidental, and consequential injuries and damages, past, present, and future, in excess of the jurisdictional threshold of this Court, an amount that shall be fully proven at the time of trial. These past, present, and future damages include, but are not limited to, the following:

a. Pain, suffering, mental, and emotional distress;

b. Physical manifestations of emotional distress including embarrassment, loss of self esteem, disgrace, and humiliations;

c. Loss of his constitutional rights;

d. Loss of employment opportunities;

e. Damage to his professional reputation;

f. Post-traumatic stress disorder;

g. Anxiety;

h. Depression;

i. Sleep disturbances and nightmares

j. Hypervigilance

k. Economic loss

l. Loss of the ordinary pleasures of everyday life

117

m. Loss of relationships

n. Travel and travel-related expenses

o. All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **RELIEF REQUESTED FOR ALL CAUSES OF ACTION**

For all the foregoing reasons, Plaintiff prays for judgment against Defendants as follows:

A. For past, present, and future non-economic damages in an amount to be determined at trial;

B. For past, present, and future general, special, incidental, and consequential damages in an amount to be determined at trial;

C. For any appropriate statutory damages;

D. For costs of this suit;

E. For punitive damages, according to proof, as appropriate to the individual cause of action;

F. For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

G. For reasonable attorneys' fees, costs, and interest, to the fullest extent allowed by law;

H. For striking of the contaminated 2021 and 2022 performance reviews from Dr. Bailey's record as requested by the Conciliation Committee with the specific annotation that this removal is consequent to his civil rights legal action;

I.  For President Robbins to repeat in print the verbal apology he delivered to Dr. Bailey on 8th May 2023 and to do so in a public forum such as the Arizona print, radio, television and web media through which he and UA customarily issue communications to citizens;

J.  For similar apology to Dr. Bailey's co-complainants for the ordeals and damages they have experienced as a result of UA's known, uncorrected and persistent civil rights violations which he raised tenaciously and repeatedly without compliance being delivered;

K.  For President Robbins to acknowledge to Faculty Senate that display of the imagery of Tommie Smith, Peter Norman and John Carlos by UA employees not subject to dress code is their right, to recognize that the historical importance of their pioneering stand in 1968 is consistent with UA's stated values including the UA position on harassment and discrimination, and to have this acknowledgment specifically read into the record by the Chair of Faculty Senate.

L.  For President Robbins to state in public and to all UA students, staff and faculty in official communication that harassment, threats and abuse delivered against a woman in her home at 1am are not the "work" of the University of Arizona, that such abuse is prohibited, to reiterate to all UA employees the Board finding that this action constitutes wrongful conduct, and to commit to enforcing the existing provisions of Board Rules 1-119 and 6-914 as well as his own 2018 Harassment Training module specifications against such violators.

M. For President Robbins to make good on his public commitment "To honor Tom Meixner's legacy by making any and all necessary changes to keep our campus safer" in a concrete and meaningful way by enacting the workplace risk and safety ombud suggestion that Dr. Bailey offered at the Staff Safety forum where UA PD were called on him on 4th May and that President Robbins personally acknowledged to the forum and viewers as "a good idea" and that Dr. Bailey had previously suggested to Presidents Shelton and Weaver Hart and many other UA officers without response until 4th May 2023. This post should be funded by administration but to maintain independence from admin the ombud should be appointed by Faculty Senate and report to Faculty Senate.

N. All such additional and/or further relief as this Court deems just and equitable under the circumstances

## **JURY DEMAND**

Now comes Plaintiff and demands a trial by jury.

Dated:   12/13/2023